```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

DOUGLAS K. MARTIN,

                Petitioner,

          -vs-                  **No. 6:13-CV-6075(MAT)**
                                                      **DECISION AND ORDER**

DAVID ROCK,

                Respondent.
___

**I.   Introduction**

Pro se petitioner Douglas K. Martin ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being held in Respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated pursuant to a judgment entered against him on January 4, 2011, in New York State Supreme Court (Erie County), following his guilty plea to one count of second degree criminal possession of a weapon (N.Y. Penal Law ("P.L.") § 265.03(3)).

**II.  Factual Background and Procedural History**

The conviction here at issue stems from Petitioner's possession, on March 31, 2010, of a loaded firearm (a semi-automatic pistol) in a place other than Petitioner's home or place of business. See N.Y. PENAL LAW § 265.03(3). On October 26, 2010, Petitioner appeared before Erie County Supreme Court Justice M. William Boller for a combined Huntley, Wade, and suppression hearing at which multiple Buffalo Police Department officers

testified about the vehicle stop on March 31, 2010, that led to Petitioner's arrest. A summary of the relevant testimony follows.

At about 7:30 p.m. on March 31, 2010, Officer Chojnacki heard about 6 shots fired while conducting a traffic stop on Bird Avenue, between Grant and Herkimer, in the City of Buffalo. A motorist informed Officer Chojnacki that she had witnessed shots being fired; "she looked in her rear-view mirror, saw a dark-colored vehicle, [and] couldn't tell whether it was an SUV or a minivan through [sic] her angle." H.5.[1] After Officer Chojnacki forwarded this information to Detective Harvey Frankel, he was not involved further in the investigation.

When BPD Officer Obed Casillas responded to the call of shots-fired at about 7:34 p.m., he encountered the victim, Jayquan Owens ("Owens"), who stated that the vehicle containing the shooters was a "gold colored Buick", that two of the individuals inside the Buick were known as "Brazzy" and "Hollywood", and that "Brazzy" and "Hollywood" frequented the Shaffer Village area. H.8-9. As Owens was speaking to Officer Casillas, Detective Frankel relayed this information over the radio. Owens stated that "Brazzy" had fired

---

[1] Numerals preceded by "H." refer to pages from the combined <u>Huntley</u>, <u>Wade</u>, and suppression hearing. Numerals preceded by "P." refer to pages from the plea transcript. Numerals preceded by "S." refer to pages from the sentencing transcript. All transcripts were submitted by Respondent in connection with his answer to the petition.

the shots and that the passenger-seat occupant was a black male with dreadlocks. H.10-11.

BPD Officer Jimmie Larke heard the call of shots-fired and the description of the suspect's vehicle as a "tan Buick" with three black male passengers. H.14-15. Within about 10 minutes of the call, Officer Larke spotted a gold-colored Buick Century with three black males in it on Tonawanda Street, about two miles from the location of the shooting incident. H.15-17, 24-25. When Officer Larke stopped the vehicle on Rano Street near River Rock, he found Petitioner in the driver's seat. The individual in the passenger-seat was a black male with "braids", and the individual in the back seat was a "medium-skinned black male". H.18. After Petitioner got out of the vehicle, Officer Larke observed that he had been sitting on a small gun holster. H.18-19. Officer Larke then placed Petitioner under arrest. H.21.

During the stop, Officer Patrick Morrow assisted Officer Larke in removing Petitioner from the Buick Century. He observed the empty gun holster on the driver's seat and "something shiny" between a visible gap in the door frame and door panel. Once the door was fully opened, a silver-colored semi-automatic pistol fell out onto the pavement. H.40, 42.

Lieutenant Michael March, the supervisor on the scene of the traffic stop, testified that a description of the vehicle and its occupants was transmitted over the radio, and that the Buick was

described as a "tan vehicle". Lieutenant March supervised the show-up during which Owens identified Petitioner as the person who shot at him. H.62-63.

Detective Carl Lundin collected the pistol as evidence and questioned Petitioner at the police station. During the interview with Detective Lundin, Petitioner stated that he was known as "Breezy". H.81,83, 86-87.

At the conclusion of the suppression hearing, trial counsel noted that the some of the police radio transmissions indicated that there were mentions of other suspect vehicles (e.g., a black SUV and a grey Honda Civic), differing in description from the tan Buick Petitioner was driving that night. Justice Boller granted trial counsel's request for an adjournment to listen to certain additional recordings to determine whether or not there were transmissions mentioning that a tan Buick was the vehicle involved in the shooting.

On November 29, 2010, the parties appeared before Justice Bolling. Trial counsel noted that the prosecutor had produced the radio transmissions referenced at the end of the suppression hearing, and that she had listened to them with the prosecutor at the District Attorney's office. Subsequently, trial counsel arranged for Petitioner to be been brought into the courtroom, and trial counsel played the transmissions for him on her laptop computer. Trial counsel conceded that, after fully

reviewing the audio recording of the radio transmissions, she did not believe she had a valid defense objection to their admission. P.3.

Justice Bolling noted that he had listened to the audio transmissions as well, and was ready to render his decision on the suppression motion. After reciting his findings of fact, Justice Bolling found that the police had probable cause to stop the vehicle, and that since Petitioner could not produce identification after the valid stop, the police were justified in ordering him to exit the vehicle. Further, the officer's observation of a gun holster on the driver's seat, where Petitioner had been sitting, confirmed that criminal activity could be afoot. The officer's observations of the door and what could be inside the door panel were in plain view, and the opening of the door wider was permissible given these observations. The handgun that fell out of the door was not the product of an impermissible search. The identification procedure was not unduly suggestive, Petitioner was not coerced into making inculpatory statements to the police, and his Miranda waiver was valid. See P.7-8.

Trial counsel then informed Justice Bolling that Petitioner wished to waive his right to a jury trial and was ready to proceed. P.8-9. Trial counsel then requested a moment to confer off-the-record with Petitioner, following which she stated that Petitioner wished to withdraw his plea of not guilty and enter a plea of

guilty to the single count of the indictment. T.10. Justice Bolling noted that the offer trial counsel had conveyed to Petitioner was a sentence promise of the statutory minimum in exchange for his guilty plea to one count of second degree criminal possession of a weapon. P.10.  Because Petitioner was a second felony offender convicted of his first violent felony, the Penal Law required a minimum of 5 years of incarceration plus a mandatory term of post-release supervision. P.10. Petitioner indicated that he understood and wished to proceed. P.10, 11.

Petitioner then entered a guilty plea to one count of second degree criminal possession of a weapon (P.L. § 265.03(3)). P.11-16. He was not required to waive his appellate rights.

Petitioner appeared for sentencing on January 4, 2011, before Justice Bolling who adjudicated him as a second felony offender pursuant to New York Criminal Procedure Law § 400.21. For his conviction of one count of P.L. § 265.03(3), a class C violent felony, Justice Bolling sentenced Petitioner, as promised, to a determinate term of 5 years of imprisonment plus 5 of post-release supervision. S.4-5.

Represented by new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. On June 15, 2012, the Appellate Division unanimously affirmed the conviction.  finding that Petitioner failed to preserve for review his challenge to the authenticity of the

recordings of the police radio transmission inasmuch as he did not object to their admission into evidence at the suppression hearing that preceded the plea colloquy. People v. Martin, 96 A.D.3d 1637, 1638 (4th Dep't 2012) (citations omitted). In any event, the Appellate Division held, Petitioner's contention that the recording was inauthentic because it might have been digitally "burned" was based upon "mere speculation" and was therefore without merit. Id. The Appellate Division further found that the police had reasonable suspicion to stop his vehicle, and the "incremental series of investigative steps taken thereafter were lawful". Id. (citations omitted). Finally, the Appellate Division summarily concluded that, to the extent that Petitioner's ineffective assistance of trial counsel claim survived his guilty plea, it lacked merit. Id. (citations omitted). The New York Court of Appeals denied leave to appeal on August 10, 2012. People v. Martin, 19 N.Y.3d 998 (2012).

This timely habeas petition followed in which Petitioner asserted two grounds for relief. First, he argued, as he did on direct appeal, that the trial court erroneously admitted the CD compilation of the radio transmissions despite it having authentication problems. Petitioner argued that it was a "burned" copy and might not be the original or actual continuous police radio transmission compiled by the police dispatcher. Second, Petitioner argued that trial counsel was ineffective in stipulating to the admissibility of the audio recording of the police radio

transmissions. After Respondent answered the petition and filed a memorandum of law in opposition, Petitioner filed a supplemental brief in which he raised a new claim, i.e., that the stop of his vehicle, the search and seizure, and his arrest violated the Fourth Amendment. Respondent filed a memorandum of law addressing the Fourth Amendment claims. Petitioner then filed a traverse.

For the reasons discussed below, Petitioner's request for a writ of habeas corpus is denied, and the petition is dismissed.

### III. Discussion

#### A.   Ineffective Assistance of Trial Counsel

To successfully advance an ineffective assistance of counsel, the petitioner must fulfill the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), by showing that "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different[,]" Contino v. United States, 535 F.3d 124, 128 (2d Cir. 2008) (citing Strickland, 466 U.S. at 688). In the context of a conviction by guilty plea, the petitioner affirmatively must show that, but for counsel's deficient representation, he "would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). According to Petitioner, but for counsel's allegedly erroneous stipulation to the admission

of the audio recordings of the police transmissions, he would have proceeded to trial instead of pleading guilty.

As noted above, prior to being introduced into evidence on November 29, 2010, the CD recording of the radio transmissions, People's Exhibit 11, was reviewed by the prosecutor, trial counsel, Petitioner, and the trial court. Indeed, the hearing was adjourned so that all of the parties could listen to the CD recording. Trial counsel's comments to the judge indicate that she deliberated carefully over the decision to stipulate but was compelled to conclude, "Obviously in light of all of the circumstances I don't believe that we have an objection to it at this time, or a valid one at this time in light of everything." P.3. Perhaps most damning to Petitioner's claim is trial counsel's subsequent comment conveying Petitioner's reaction to listening to the audio recording: "[I]ronically [Petitioner] noted after the same portion I did that he did not need to listen to the rest of the radio transmissions, that he was . . . satisfied with what he listened to . . . ." P.3. Notably, Petitioner did not interject or attempt to correct trial counsel at that time.

After reviewing the entire record, it is clear that trial counsel provided competent representation to Petitioner. With particular respect to her handling of the audio recordings and the evidentiary stipulation, trial counsel did not perform in an objectively unreasonable manner. Furthermore, Petitioner has not

affirmatively demonstrated prejudice. Had Petitioner proceeded to trial, the audio recordings undoubtedly would have been admitted, even over defense objection. Given the strength of the prosecution's case, the likelihood of conviction was a near certainty. The Court accordingly cannot credit Petitioner's assertion that he would have risked a possible sentence of 15 years, rather than the 5 years he was promised, but for counsel's decision to stipulate to the admission of the CD recording.

### B. Erroneous Admission of Police Radio Transmissions

Petitioner contends, as he did on direct appeal, that the CD compilation of the police radio transmission was digitally "burned" and "recorded in a manner not by the dispatcher, but by an unknown person who may have compiled the recordings in an arbitrary sequence." Petitioner's Appellate Brief at 14, Respondent's Exhibit B. He argues that it should not have been admitted into evidence until the person who compiled the CD recording could testify as to how it was prepared and swear to its authenticity. Id. The Appellate Division held that Petitioner failed to preserve for review his challenge to the authenticity of the CD recording of the police radio transmission inasmuch as he did not object to its admission into evidence at the suppression hearing that preceded the plea colloquy. People v. Martin, 96 A.D.3d at 1638 (citations omitted). In any event, the Appellate Division held, Petitioner's

contention that the recording was inauthentic because it might have been digitally "burned" was based upon "mere speculation" and therefore was without merit. Id.

At the outset, the Court observes that Petitioner has never asserted–either in state court or in this habeas proceeding–that his guilty plea was not knowing, intelligent, and voluntary. The Court has reviewed the plea colloquy and finds that Petitioner in fact voluntarily elected to plead guilty to one count of second degree criminal possession of a weapon in satisfaction of the one-count indictment and in exchange for a sentence promise of the mandatory statutory minimum.

Where, as a here, "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 257, 267 (1973); see also United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996). Petitioner's contention that the CD recording of the police audio transmissions was unauthenticated and inadmissible is precisely the type of independent claim relating to pre-plea events contemplated by Tollett, 411 U.S. at 267. Having knowingly, voluntarily, and intelligently entered into a favorable plea agreement, with the advice of competent counsel, Petitioner now cannot obtain habeas review of claim of pre-plea

error in connection with the police audio recordings. See United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) ("[A]t least on collateral attack of a judgment of conviction, under Tollett a petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt."); McMann v. Richardson, 397 U.S. 759, 770 (1970) ("[A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.") (footnote omitted).

### C. Fourth Amendment Claims

In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. at 267. However, a relevant exception to this rule has been recognized: where a state permits appeal of a pre-plea constitutional ruling, federal courts will address such claims on habeas review notwithstanding the guilty plea. Lefkowitz v. Newsome, 420 U.S. 283, 293 (1975) ("[W]hen state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."). Pursuant to New York Criminal Procedure Law

§ 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite conviction upon a guilty plea. Accordingly, in New York, a guilty plea does not bar habeas review of constitutional claims arising from an illegal search and seizure, provided that counsel filed a suppression motion in state court. See N.Y. CRIM. PROC. LAW § 710.70(2),(3) (discussed in Lugo v. Artus, No. 1:05-CV-1998, 2008 WL 312298, at *4 (S.D.N.Y. Jan. 31, 2008) (finding that petitioner who pleaded guilty could not avail himself of the Lefkowitz exception because he failed to file a suppression motion)). Here, Petitioner unsuccessfully sought to suppress the evidence gained from his search and seizure, and his guilty plea therefore does not waive his right to challenge the admissibility of that evidence through a habeas corpus petition. E.g., Perez v. Ercole, No. 1:09-CV-2180, 2010 WL 2541974, at *4 n. 3 (S.D.N.Y. June 22, 2010) ("Perez, having sought, unsuccessfully, to suppress his statements to law enforcement agents prior to pleading guilty, has not waived his right to challenge the admissibility of those statements through a habeas corpus petition.") (citing United States ex rel. Sanney v. Montanye, 500 F.2d 411, 414 (2d Cir. 1974)).

Nonetheless, this Court's review of Petitioner's Fourth Amendment claim is precluded pursuant to the doctrine articulated by the Supreme Court in Stone v. Powell, 428 U.S. 465, 482 (1976) ("[W]here the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie) (emphasis supplied). Petitioner cannot and does not contend that New York failed to provide appropriate corrective procedures to address his Fourth Amendment claims. Indeed, Petitioner took full advantage of the opportunity to litigate these claims at both the trial court level and on direct appeal. Petitioner likewise has not demonstrated that there was an "unconscionable breakdown" in the corrective process, or that the state courts "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992) (internal quotations and citation omitted). Petitioner's "mere disagreement" with the outcome of the state courts' rulings are not "the equivalent of an unconscionable breakdown in the state's corrective process." Id. His Fourth Amendment claims accordingly are barred from habeas review by this Court. See id.

**IV. Conclusion**

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be

taken in good faith, and therefore leave to appeal in forma pauperis is denied. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

    **SO ORDERED.**

                                        S/Michael A. Telesca
                              _____
                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge

DATED:    Rochester, New York
           November 13 , 2014